UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JSW STEEL (USA) INC.<br><br>            Plaintiff,<br><br>– against –<br><br>UNITED STATES,<br><br>            Defendant. | Court No. 19-00133<br><br>**COMPLAINT** |

Plaintiff JSW Steel (USA) Inc. ("JSW USA"), by its undersigned attorneys, Chaffetz Lindsey LLP, for its Complaint against Defendant United States, acting by and through the U.S. Department of Commerce, alleges as follows:

## NATURE OF THE ACTION

1. In March 2018, the President, acting pursuant to Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862), imposed a 25% tariff on steel imports. The President's Proclamation recognized that these tariffs could have unintended consequences for U.S. businesses that rely on imports of steel products not otherwise immediately available in the domestic market. The Proclamation therefore expressly directed the Department of Commerce to grant exclusions from the Section 232 tariffs to U.S.-based businesses for imported steel products that are not immediately available in sufficient quality and quantity in the United States.

2. According to the Department of Commerce, the purpose of the exclusion was:

> [T]o protect downstream manufacturers that rely on products not produced by U.S. domestic industry at this time. The guiding principle is that, if U.S.

> domestic industry does not or will not produce a given steel or aluminum product of the quality needed by users in the United States, companies that rely on those products will not pay duties on them.

Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum, 83 Fed. Reg. 46,026, 46,038–39 (Sept. 11, 2018).

3. JSW USA owns and operates a facility in Baytown, Texas, where it manufacturers steel plate and pipe for use in critical infrastructure projects, such as natural gas and oil transmission pipelines, shipbuilding, transmission pole towers, wind towers, railroad tank cars, and other heavy-equipment industries that need high-quality steel plate and pipe products. In order to produce these steel products, JSW USA requires a reliable quantity of high-quality steel slab feedstock. Because this product is not available in the U.S. market in the quality and quantities that JSW USA requires, it has been importing the necessary steel slab into its Baytown plant.

4. Nevertheless, because it is committed to improving domestic steel manufacturing, JSW USA and its parent JSW Steel Ltd. are in the process of investing hundreds of millions of dollars to upgrade the Baytown, Texas facility. This, in turn, will create hundreds of new jobs at the Baytown plant.

5. The Baytown project is part of the JSW Group's overall commitment to the United States steelmaking industry. In addition to Baytown, the JSW Group recently purchased a steel mill in Mingo Junction, Ohio, where it is investing hundreds of millions of dollars to upgrade that facility. Through these substantial investments, JSW USA is creating hundreds of jobs throughout the United States.

6. However, at least until all of this work is completed, JSW USA must continue to rely on imported steel slab from India and Mexico to sustain the plant. JSW USA therefore applied for narrowly tailored, short-term exclusions from the Section 232 steel tariffs so that it

could continue to operate its U.S. steel plate and line pipe facilities while it proceeds with the construction of its new state-of-the-art facilities.

7.     Despite the foregoing, the Department of Commerce ignored the record evidence establishing that the steel slab JSW USA imports is not presently available in the U.S. market, and instead issued the same boilerplate denial to each and every one of JSW USA's exclusion requests.  As a result, JSW USA has paid tens-of-millions of dollars in tariffs from which it should have been exempted.  In denying JSW USA's exclusion requests, the Department yielded to the objections of three competitive domestic steel producers – United States Steel Corporation, AK Steel Corporation, and Nucor Corporation – which filed thousands of objections to their domestic competitors' exclusion requests.  In their objections, the companies claimed, without any evidence, that they could supply at least 85 million metric tons of steel when (a) their total capacity is only 35 million metric tons and (b) they do not and cannot produce many of the types and sizes of products needed.

8.     In sustaining the domestic competitors' objections, the Department undertook no effort to verify their claims, ignored the conclusive evidence that these companies are unable to produce the subject products in the required quality or quantity, and failed even to offer any reasoned basis for its decisions.  Thus, the Department effectively abandoned the standards established by Proclamation 9705 and the Department's own regulations, thereby depriving JSW USA of its right to due process and fair treatment.  In short, the Department's actions were arbitrary, capricious, and an abuse of discretion, in flagrant violation of the Administrative Procedure Act.  *See* 5 U.S.C. §§ 701 *et seq.*

## JURISDICTION

9.     This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(2) and (4) because it concerns claims against the United States or its agencies arising out

of laws concerning "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" and the "administration and enforcement" of such laws.

## THE PARTIES AND STANDING

10. JSW Steel (USA) Inc. manufactures steel plate and longitudinal submerged arc welded pipe for use in critical infrastructure projects in the United States.

11. JSW USA has standing to bring this action because it has been adversely affected or aggrieved by agency action within the meaning of Section 702 of Title 5 of the United States Code, namely the Department of Commerce's wrongful denial of JSW USA's requests for exclusions from Section 232 steel tariffs.  28 U.S.C. § 2631(i); 5 U.S.C. § 702.

12. Defendant is the United States of America, acting by and through the U.S. Department of Commerce (the "Department").

## FACTUAL BACKGROUND

**A.   Statutory and Regulatory Background**

13. Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862), authorizes the Secretary of Commerce, in coordination with the Secretary of Defense, to conduct an investigation "to determine the effects on the national security of imports" of any articles. Upon completing this investigation, the Secretary must provide the President with a report advising whether the articles under investigation are "being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security."  19 U.S.C. § 1862(b)(1)(A), (3)(A).

14. If the President concurs with the Secretary's finding that a threat exists, the President shall "determine the nature and duration of the action that, in the judgment of the

President, must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security." *Id.* § 1862(c)(1)(A)(ii).

15. Pursuant to Section 232, on March 8, 2018, President Trump issued Proclamation 9705, imposing additional duties on imports of steel. The Proclamation further directed the Secretary of Commerce to grant exclusions from these tariffs if the Secretary determines that any steel product for which an exclusion is requested is not "produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality." Adjusting Imports of Steel into the United States, Pres. Proc. No. 9705, 83 Fed. Reg. 11,625, 11,627 (Mar. 8, 2018).

16. On March 19, 2018, the Department of Commerce, through its Bureau of Industry and Security ("BIS"), issued an interim final rule (codified at 15 C.F.R. pt. 705, supp. 1) setting forth the circumstances in which the Department would grant a tariff exclusion to directly affected U.S. businesses. Following a notice and comment period, on September 11, 2018, the Secretary supplemented the rules for tariff exclusion requests. *See* Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum, 83 Fed. Reg. 46,026 (Sept. 11, 2018).

17. The Rule adopted by the Department of Commerce sets forth the procedures for affected parties to request tariff exclusions. It also provides that domestic producers may object if they are capable of promptly providing the imported product in the United States.

18. The Department's Rule provides that a product is "not produced in the United States in a sufficient and reasonably available amount" if:

> the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities. "Immediately" means whether the product is currently being produced or could be produced "within eight weeks" in the amount needed in the business activities of the user of steel in the United States described in the exclusion request.

15 C.F.R. pt. 705, supp. 1(c)(6)(i).

19.     The Department further defined when a steel product is "not produced in the United States in a satisfactory quality":

> The exclusion review criterion "not produced in the United States in a satisfactory quality" does not mean that the steel needs to be identical, but it does need to be equivalent as a substitute product. "Substitute product" for purposes of this review criterion means that the steel being produced by an objector can meet "immediately" . . . the quality (e.g., industry specs or internal company quality controls or standards), regulatory, or testing standards, in order for the U.S. produced steel to be used in that business activity in the United States by that end user.

*Id.* pt. 705, supp. 1(c)(6)(ii).

20.     The Department's Rule plainly and sensibly places the burden on objectors to demonstrate that they can produce the "substitute product" within the requisite timeframe:

> The objection should clearly identify, and provide support for, its opposition to the proposed exclusion, with reference to the specific basis identified in, and the support provided for, the submitted exclusion request. If the objector is asserting that it is not currently producing the steel identified in an exclusion request but can produce the steel within eight weeks (meaning the objector meets the definition of being able to supply the steel "immediately" in order to meet the demand identified in the exclusion request), the objector must identify how it will be able to produce the article within eight weeks. This requirement includes specifying in writing to the U.S. Department of Commerce as part of the objection, the timeline the objector anticipates in order to start or restart production of the steel included in the exclusion request to which it is objecting.

*Id.* pt. 705, supp. 1(d)(4).

### B.     JSW's Requests for Exclusion from Section 232 Tariffs

21.     On April 17, 2018, JSW USA filed six requests for exclusions from the Section 232 tariff for certain steel slab, manufactured by its parent company, JSW Steel Ltd., in India. The six requests were limited to alloy and non-alloy steel slabs produced to nominal thicknesses of 8 inches (203 mm), 10 inches (254 mm), or 12 inches (305 mm), and a width over 70 inches (1778 mm).

22. Pursuant to Proclamation 9740, beginning June 1, 2018, the Section 232 tariffs also applied to steel imports from Mexico. *See* Adjusting Imports of Steel into the United States, Pres. Proc. No. 9740, 83 Fed. Reg. 20,683, 20,685 (Apr. 30, 2018). Accordingly, on June 4, 2018, JSW USA filed six exclusion requests for similar steel slab that it imports from ArcelorMittal Mexico. The six requests were limited to alloy and non-alloy steel slabs produced to a nominal thickness of 7.8 inches (197 mm), 8.8 inches (223 mm), or 9.8 inches (247 mm), and a width over 70 inches (1778 mm).

23. The following tables summarize JSW USA's exclusion requests and the corresponding rulings from the Department for steel slab imports from India (Table 1) and Mexico (Table 2).

| <div align="center">**Table 1**<br>**Exclusion Requests for Alloy and Non-alloy Steel Slab from India**</div> ||||||
|---|---|---|---|---|
| **Number** | **Date Filed** | **Description** | **Harmonized Tariff Schedule Code** | **Date Denied** |
| BIS-2018-0006-1218 | April 17, 2018 | Non-alloy semi-finished, thickness 195 mm – 230 mm | 7207120050 | April 19, 2019 |
| BIS-2018-0006-1221 | April 17, 2018 | Non-alloy semi-finished, thickness 235 mm – 270 mm | 7207120050 | April 19, 2019 |
| BIS-2018-0006-1227 | April 17, 2018 | Non-alloy semi-finished, thickness 275 mm – 310 mm | 7207120050 | April 19, 2019 |
| BIS-2018-0006-2335 | April 17, 2018 | Alloy semi-finished, thickness 195 mm – 230 mm | 7224900055 | April 19, 2019 |
| BIS-2018-0006-2336 | April 17, 2018 | Alloy semi-finished, thickness 235 mm – 270 mm | 7224900055 | April 19, 2019 |
| BIS-2018-0006-2337 | April 17, 2018 | Alloy semi-finished, thickness 275 mm – 310 mm | 7224900055 | April 19, 2019 |

| Table 2 Exclusion Requests for Alloy and Non-alloy Steel Slab from Mexico ||||| 
|---|---|---|---|---|
| **Number** | **Date Filed** | **Description** | **Harmonized Tariff Schedule Code** | **Date Denied** |
| BIS-2018-0006-29462 | June 4, 2018 | Non-alloy semi-finished, thickness 172 mm – 207 mm | 7207120050 | May 8, 2019 |
| BIS-2018-0006-29465 | June 4, 2018 | Alloy semi-finished, thickness 172 mm – 207 mm | 7224900055 | May 8, 2019 |
| BIS-2018-0006-29470 | June 4, 2018 | Non-alloy semi-finished, thickness 198 mm – 233 mm | 7207120050 | May 8, 2019 |
| BIS-2018-0006-29474 | June 4, 2018 | Alloy semi-finished, thickness 198 mm – 233 mm | 7224900055 | May 8, 2019 |
| BIS-2018-0006-29481 | June 4, 2018 | Non-alloy semi-finished, thickness 222 mm – 257 mm | 7207120050 | May 8, 2019 |
| BIS-2018-0006-29484 | June 4, 2018 | Alloy semi-finished, thickness 222 mm – 257 mm | 7224900055 | May 8, 2019 |

24.     Three companies, Nucor Corporation ("Nucor"), United States Steel Corporation ("U.S. Steel"), and AK Steel Corporation ("AK Steel"), filed the same blanket objections to JSW USA's exclusion requests as they filed in response to thousands of other requests by their domestic competitors.  The objectors claimed, without any support, that AK Steel and U.S. Steel could manufacture the slabs in the quality and quantity JSW USA needs within the requisite timeframe.  The only actual proof in the record, however, is the evidence submitted by JSW USA, showing that none of the objectors could provide a suitable replacement for the imported

slab, let alone in a timely manner. Hence, JSW USA is plainly entitled to its requested exclusions under 15 C.F.R. pt. 705, supp. 1.

### 1. The steel slab JSW USA imports is "not produced in the United States in sufficient and reasonably available amount"

25. The slab JSW USA requires is "not produced in the United States in sufficient and reasonably available amount" for a variety of reasons, including most importantly that no domestic supplier has the capacity to produce slab in the required dimensions. Nucor admits that it cannot produce slab in any of the thicknesses for which JSW USA sought an exclusion. U.S. Steel and AK Steel also lack the capability to produce the 8.8 inch, 9.8 inch, 10 inch, or 12 inch slab covered by JSW USA's exclusion requests. While U.S. Steel and AK Steel do produce limited amounts of 7.8 and 8 inch slab, they consume this steel themselves, and therefore are not a viable source of supply for JSW USA. The objectors have offered no evidence to the contrary.

### 2. The steel slab JSW USA imports is "not produced in the United States in satisfactory quality"

26. Even if the objectors had the capacity to provide the sizes and requisite quantity of steel slab that JSW USA imports (and they do not), their slab is not of "satisfactory quality" to meet JSW USA's requirements. It therefore does not qualify as a "substitute product" under the Department's regulation. *See* 15 C.F.R. pt. 705, supp. 1(c)(6)(ii).

27. JSW USA does not use its slab feedstock to produce commodity-grade steel products. Rather, it uses the bulk of the imported slab in the production of large diameter welded steel pipe that must meet very specific technical requirements to produce X70, X80 or higher grade steel to satisfy the American Petroleum Institute ("API") specifications, as its customers require. JSW USA also uses this imported slab to produce high-grade steel products for use in manufacturing rail cars, wind towers, pole towers, and pressure vessels. None of the objectors is qualified to produce X70 or higher grade steel. The objectors also lack adequate reconditioning

facilities, so that any slab they could produce would be susceptible to transverse and longitudinal cracking, making it unsuitable for JSW USA's production needs.

> **3. The objectors failed to meet the requirement that they provide specific written evidence of their ability to provide the substitute product "immediately"**

28. All three objectors failed to provide any evidence that they could produce the imported slab "immediately," *i.e.*, within 8 weeks, as required by the Department's Rule. *See* 15 C.F.R. pt. 705, supp. 1(d)(4). Even if AK Steel and U.S. Steel had the capability to produce steel slab suitable to feed JSW USA's operations, they admit they could only do so by restarting idle facilities.

29. The Department's regulation requires an objector who asserts that "it is not currently producing the steel identified in an exclusion request . . . [to] identify how it will be able to the produce the article within eight weeks." *See id*. To meet its burden, the objector must "specify[] in writing . . . the timeline the objector anticipates in order to start or restart production of the steel included in the exclusion request to which it is objecting." *See id*. Nucor did not claim it could supply the steel slab and neither AK Steel nor U.S. Steel provided any specific written timeline, as required under the Rule, for restarting their idle mills, let alone equipping those mills, as would be necessary to produce slabs in the chemistries and dimensions covered by JSW USA's exclusion requests. Having failed to meet their burden, under its Rule the Department should not have considered these objections. *Id.* pt. 705, supp. 1(h)(1)(ii).

30. Further, neither U.S. Steel nor AK Steel could produce the slab "immediately" – *i.e.*, within 8 weeks – because, as these objectors well know, under ordinary circumstances testing and qualifications alone would require at least 8 to 10 months. Here, since U.S. Steel and AK Steel lack the requisite reconditioning facilities, the qualification process would be even more difficult and time consuming. Thus, as the objectors knew when they filed their objections,

even if they could ultimately meet the requisite technical specifications, it would take well in excess of 8 months before they could even be in a position to provide slab to JSW USA. This was clear from the parties' submissions to the Department.

### C. The Department's Denial of JSW's Exclusion Requests

31. According to the Department's regulations, it should decide each exclusion request no later than 106 days after submission. *See id.* pt. 705, supp. 1(h)(3)(i). Nevertheless, the Department took more than a year to deny JSW USA's exclusion requests. When it finally issued its decisions, the Department simply recited, verbatim, the same boilerplate rejection language for each of the 12 requests, providing no reasoning whatsoever to support its conclusions.

32. The Department's denials each parroted the following generic, conclusory language as the only basis for its decisions:

> In examining whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA [International Trade Administration] recommends finding, based on all of the evidence presented, that the product referenced in the above-captioned exclusion request is produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality, and recommends denying the request for an exclusion.
>
> BIS accepts ITA's recommended findings as to the domestic availability of the product, and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding domestic availability.

33. This rote, unreasoned denial of JSW USA's exclusion requests without any explanation, any consideration of the evidence, or any follow-up inquiry or investigation is, on its face, arbitrary and capricious.

34. Notably, the Department's decisions denying JSW USA's requests are part of a broader pattern in which the Department has rejected thousands of exclusion requests by providing the same pro forma, conclusory explanation, with no reasoning or analysis. A

common denominator in these cases is that large competitors such as AK Steel, U.S. Steel, and Nucor filed objections to the requests.  According to a study conducted by the Mercatus Center at George Mason University, approximately 99 percent of steel tariff exclusion requests were denied when these companies filed an objection.  *See* Christine McDaniel & Danielle Parks, *Tariff Exclusion Requests: A One-Year Update*, Mercatus Center (Apr. 11, 2019), www.mercatus.org/bridge/commentary/tariff-exclusion-requests-one-year-update (attached hereto as Exhibit 1).

35. Another common feature of the Department's action, is that it denied all these exclusion requests, as it did JSW USA's requests, without (a) demanding proof from the objectors, (b) developing and adhering to a process designed to ascertain the truth regarding these unsupported objections, or (c) providing any reasoned basis for its decisions.  This flagrant disregard of the basic requirements of the APA is a quintessential example of unlawful agency action.

<div align="center">

**COUNT I**
**(Administrative Procedure Act (5 U.S.C. §§ 701–706))**
**Exclusion Requests for alloy and non-alloy steel slab from India**

</div>

36. JSW USA hereby incorporates Paragraphs 1-35 above as if fully restated herein.

37. On April 17, 2018, JSW USA submitted Exclusion Request Nos. BIS-2018-0006-1218, BIS-2018-0006-1221, BIS-2018-0006-1227, BIS-2018-0006-2335, BIS-2018-0006-2336, and BIS-2018-0006-2337 seeking exclusions from the Section 232 steel tariffs for certain alloy and non-alloy semi-finished steel slab imported from India.

38. Applying the standards set forth in the Department's Rule (15 C.F.R. pt. 705, supp. 1) to the evidence in the record, the only reasonable conclusion that the Department could properly have reached with regard to these exclusion requests was that JSW USA cannot obtain

slab in the U.S. market in a sufficient quantity or quality on a timely basis to replace the steel slab it currently imports. Accordingly, JSW USA was and remains entitled to the requested tariff exclusions. However, on April 19, 2019, the Department denied JSW USA's requests.

39. The Department of Commerce's decisions denying JSW USA's requests for exclusion from the Section 232 steel tariffs, without any evidentiary basis and without any expressed, reasoned basis for doing so, were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. They were rendered "without observance of procedure required by law," and thus must be held "unlawful and set aside" by this Court. *See* 5 U.S.C. §§ 702, 706.

## COUNT II
### (Administrative Procedure Act (5 U.S.C. §§ 701–706))
### Exclusion Requests for alloy and non-alloy steel slab from Mexico

40. JSW USA hereby incorporates Paragraphs 1-35 above as if fully restated herein.

41. On June 4, 2018, JSW USA submitted Exclusion Request Nos. BIS-2018-0006-29462, BIS-2018-0006-29465, BIS-2018-0006-29470, BIS-2018-0006-29474, BIS-2018-0006-29481, and BIS-2018-0006-29484 seeking an exclusion from the Section 232 steel tariffs for certain alloy and non-alloy semi-finished steel slab imported from Mexico.

42. Applying the standards set forth in the Department's Rule (15 C.F.R. pt. 705, supp. 1) to the evidence in the record, the only reasonable conclusion that the Department could properly have reached with regard to these exclusion requests was that JSW USA cannot obtain slab in the U.S. market in a sufficient quantity or quality on a timely basis to replace the steel slab it currently imports. Accordingly, JSW USA was and remains entitled to the requested tariff exclusions. However, on May 8, 2019, the Department denied JSW USA's requests.

43. The Department of Commerce's decisions denying JSW USA's requests for

exclusion from the Section 232 steel tariffs, without any evidentiary basis and without any expressed, reasoned basis for doing so, were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. They were rendered "without observance of procedure required by law," and thus must be held "unlawful and set aside" by this Court. *See* 5 U.S.C. §§ 702, 706.

## REQUEST FOR RELIEF

WHEREFORE, JSW USA respectfully requests that this Court enter judgment as follows:

(i) Declaring that the Department of Commerce's denials of JSW USA's exclusion requests were arbitrary and capricious or otherwise unlawful in violation of the APA (5 U.S.C. §§ 701 *et seq.*);

(ii) Declaring that JSW USA is entitled to the requested exclusions from the Section 232 steel tariffs, in accordance with Proclamation 9705 and 15 C.F.R. pt. 705, supp. 1, and ordering the Department of Commerce to instruct Customs and Border Patrol to refund the Section 232 tariffs previously paid by JSW USA;

(iii) Alternatively, remanding the matter to the Department of Commerce for proper treatment and consideration, in accordance with the requirements of the APA;

(iv) Awarding JSW USA such other relief as the Court deems just and proper.

Dated:   New York, New York
         July 30, 2019

Respectfully submitted:

**CHAFFETZ LINDSEY LLP**

By: /s/ Sanford Litvack

Sanford Litvack
Andrew L. Poplinger
1700 Broadway, 33rd Floor
New York, NY 10019
Tel. (212) 257-6960
Fax. (212) 257-6950
s.litvack@chaffetzlindsey.com
a.poplinger@chaffetzlindsey.com

*Counsel for Plaintiff JSW Steel (USA) Inc.*