Slip Op. 20-111

## UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| **JSW STEEL (USA) INC.,** |
| **Plaintiff,** |
| v. |
| **UNITED STATES,** |
| **Defendant.** |

**Before: Claire R. Kelly, Judge**

**Court No. 19-00133**

## <u>OPINION AND ORDER</u>

[Remanding the U.S. Department of Commerce's denials of plaintiff's requests for exclusion of certain steel articles from Section 232 tariffs, ordering further explanation of the steps taken to complete the record and supplementation of the record as appropriate, and denying plaintiff's request for discovery and for a privilege log.]

Dated: August 5, 2020

<u>Sanford Litvack</u>, <u>Andrew L. Poplinger</u>, and <u>R. Matthew Burke</u>, Chaffetz Lindsey LLP, of New York, NY, for plaintiff JSW Steel (USA) Inc.

<u>Joseph H. Hunt</u>, Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With him on the brief were <u>Jeanne E. Davidson</u>, Director, <u>Tara K. Hogan</u>, Assistant Director, and <u>Stephen C. Tosini</u>, Senior Trial Counsel.

Kelly, Judge: This action is before the court on motion for judgment on the agency record. <u>See</u> Pl.'s Mot. J. Agency R., Dec. 13, 2019, ECF No. 29 ("Pl.'s Mot."). Plaintiff JSW Steel (USA) Inc. ("JSW") challenges the U.S. Department of Commerce's ("Department" or "Commerce") denials of twelve requests for exclusions ("exclusion requests") for certain steel slabs from an additional 25 percent <u>ad valorem</u>

tariff imposed on steel articles pursuant to section 232 of the Trade Expansion Act of 1962 ("Section 232"), 19 U.S.C. § 1862 (2012).  <u>See</u> Compl., July 30, 2019, ECF No. 2; <u>see also</u> [Conf.] Pl.'s Memo. L. Supp. Mot. J. Agency R. at 1–5, Dec. 13, 2019, ECF No. 30 ("Pl.'s Br.").  JSW contends that Commerce's denials of exclusion requests for alloy and non-alloy steel slab imported from India and Mexico were arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law.  <u>See</u> Compl. at ¶¶ 36–43; Pl.'s Br. at 4.  In addition, JSW requests the court to order discovery regarding the substance of Commerce's <u>ex parte</u> meetings with objectors to JSW's exclusion requests as well as for Defendant to furnish a privilege log for redactions in the administrative record.  Pl.'s Br. Resp. Ct.'s July 7, 2020 Order at 3–7, July 13, 2020, ECF No. 85 ("Pl.'s Br. Resp. Ct.'s Order").  For the reasons that follow, the court: (i) orders Commerce as part of its certification of the record to set forth the steps taken to ascertain that the record is complete, including identifying how the Department identified missing information and the existence of <u>ex parte</u> communications and, further, how it determined whether and to what extent any <u>ex parte</u> communications were or were not relied upon or referred to by the Department in making its determinations; (ii) to further supplement the record with any information that it determines should be included in the record, inclusive of any information directly or indirectly considered by the Department in its determinations, as a result of explaining its record compilation process; and, (iii) remands for further consideration and explanation Commerce's denials of all twelve

exclusion requests, in light of the completed record.  However, the court denies JSW's

requests for discovery and for a privilege log.

## BACKGROUND

Following an investigation and determination by the Bureau of Industry and

Security ("BIS"), a sub-agency of Commerce, that imports of steel threaten national

security, the President issued an executive order, Proclamation 9705, imposing a 25

percent ad valorem tariff on all imports of certain steel articles, effective March 23,

2018.  Adjusting Imports of Steel Into the United States, Proclamation 9705 of March

8, 2018, 83 Fed. Reg. 11,625 (Mar. 8, 2018) ("Proclamation 9705"); see also 19 U.S.C.

§ 1862.[1]  In addition, Proclamation 9705 tasked the Secretary of Commerce with

developing a process to exclude from the tariff certain steel products that are not

produced in the United States of a satisfactory quality or in a sufficient and

reasonably available amount.  Id., 83 Fed. Reg. at 11,627.

On March 19, 2018, Commerce published an interim final rule that set forth

the product exclusion process.  See Requirements for Submissions Requesting

---

[1] However, recognizing the United States' security relationship with some countries, the President temporarily exempted imports of steel articles from, inter alia, Mexico. Proclamation 9705, 83 Fed. Reg. at 11,626.  The exclusion of steel articles from Mexico expired on June 1, 2018.  See Adjusting Imports of Steel Into the United States, Proclamation 9894 of May 19, 2019, 84 Fed. Reg. 23,987, 23,988 (May 23, 2019). Relevant here, JSW sought exclusions for its imports of steel slab from Mexico beginning in June 2018.  See, e.g., BIS Decisions for JSW Exclusion Requests (BIS-2018-0006-1218-2337) at JSW-GEN-0002–0004, Apr. 19, 2019; see also Pl.'s Br. at 9.

<u>Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum</u>, 83 Fed. Reg. 12,106 (Dep't Commerce Mar. 19, 2018).  Subsequently, based on comments and Commerce's experience administering the first interim final rule, Commerce issued a second interim final rule on September 11, 2018 that modified the first interim final rule.[2]  <u>See</u> <u>Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum</u>, 83 Fed. Reg. 46,026 (Dep't Commerce Sept. 11, 2018) ("<u>September Rule</u>").  Taken together, the rules, now codified at 15 C.F.R. Pt. 705, Supp. 1 (2019), identify who may request an exclusion ("requestor") and who may object to a request for an exclusion ("objector"); set forth the formalities and required information in requests and objections as well as for rebuttals and surrebuttals; define the criteria by which Commerce—and its subagencies, the BIS and the International Trade Administration ("ITA")—evaluates a request for an exclusion;[3] and, establish timelines for the exclusion request process.

---

[2] Commerce issued a third interim final rule to establish a web portal to house requests, objections, rebuttals, and surrebuttals but did not otherwise amend the exclusion process.  <u>Implementation of New Commerce Section 232 Exclusions Portal</u>, 84 Fed. Reg. 26,751 (Dep't Commerce June 10, 2019).

[3] The Department identifies BIS as "the lead agency" in deciding whether to grant exclusion requests and the ITA as "analyzing requests and objections to evaluate whether there is domestic production available to meet the requestor's product needs[.]" <u>September Rule</u>, 83 Fed. Reg. at 46,027, 46,032.

Directly affected individuals or organizations using steel in business activities located in the United States may submit exclusion requests. 15 C.F.R. Pt. 705, Supp. 1 at ¶ (c)(1). Requestors must complete and submit an electronic form, which requires certain factual information. Id. at ¶¶ (b)(1), (c)(3). The submission must include the requestor's name, the date, and the 10-digit Harmonized Tariff Schedule of the United States ("HTSUS") statistical reporting number for the requested steel article to be excluded. Id. at ¶ (c)(2).[4] In addition, the regulations require a requestor to "clearly identify" and "provide support" for which of the three enumerated criteria the requestor bases its request. Id. at ¶ (c)(5). Individuals or organizations that manufacture steel in the United States may object to an exclusion request by, likewise, submitting an electronic form that identifies the objector and the relevant exclusion request. Id. at ¶ (d). The objector must also identify and provide support as to why Commerce should reject the request based on the three criteria. Id. at ¶¶ (c)(5), (d)(4). A requestor may rebut any objections, and objectors may submit surrebuttals. Commerce denies incomplete exclusion requests and declines to consider any incomplete objections, rebuttals, and surrebuttals. Id. at ¶ (h)(1).

Commerce reviews complete exclusion requests to determine whether the article described in the request meet any of three criteria, namely "the article is not

---

[4] In addition, the submission must include chemistry by percentage breakdown by weight, metallurgical properties, surface quality, and distinct critical dimensions; also, the submission may specify the minimum and maximum range dimensions. 15 C.F.R. Pt. 705, Supp. 1 at ¶ (c)(2).

produced in the United States in a sufficient and reasonably available amount, is not produced in the United States in a satisfactory quality, or for specific national security concerns." Id. at ¶¶ (c)(6), (h)(2). The regulations define the criterion "not produced in the United States in a sufficient and reasonably available amount" to mean that the amount of steel needed by the requestor is not available "immediately" to meet its business needs. Id. at ¶ (c)(6)(i). By "immediately," the regulations elaborate that the product is currently produced or could be produced within eight weeks in the amount needed described in the exclusion request. Id. The criterion "not produced in the United States in a satisfactory quality" requires the steel to be equivalent as a "substitute product," as in steel produced by an objector that can "immediately" meet "the quality (e.g., industry specs or internal company quality controls or standards), regulatory, or testing standards, in order for the U.S. produced steel to be used in that business activity in the United States by that end user." Id. at ¶ (c)(6)(ii). Finally, the criterion "for specific national security considerations" enables Commerce, in consultation with other parts of the government, as warranted, to determine whether denying an exclusion request would have an impact on national security. Id. at ¶ (c)(6)(iii).

Commerce "normally" will issue its response to an exclusion request as a memorandum that is "responsive to any of the objection(s), rebuttal(s) and surrebuttal(s)" within 106 days of the exclusion request submission. Id. at ¶¶

(h)(2)(i)(B), (h)(3)(i).[5]  Granted exclusion requests are generally approved for one year

on a product basis and are usually limited to the requestor, unless Commerce

authorizes the exclusion to apply to additional importers.  Id. at ¶¶ (c)(2), (h)(2)(iv).

If an exclusion request is denied based on a representation made by an objector with

respect to the availability of the requested steel or of a substitute in the United States,

and it later comes to light that the representation is inaccurate, a requestor may

submit a new exclusion request that refers back to the original denied request.  Id. at

¶ (c)(6)(i)–(ii).

JSW submitted twelve requests for exclusion for alloy and non-alloy steel

slabs.[6]  Six of the requests were for slab from India with thicknesses of 8, 10, and 12

inches;[7] the other six were for slab from Mexico with thicknesses of 7.8, 8.8, and 9.8

---

[5] When a properly filed, complete exclusion request receives no objections, Commerce will grant the request if it meets the requisite criteria and presents no national security concerns.  See 15 C.F.R. Pt. 705, Supp. 1 at ¶ (h)(2)(ii).

[6] BIS assigns each exclusion request an individual number that follows a standardized docket number "BIS-2018-0006-."  Given this formulation, the court identifies each exclusion request, including all underlying documentation that appears in the record pertaining to the cited request by the last digits assigned by the Department of Commerce that follow the number "BIS-2018-0006-".  For example, the court refers to Exclusion Request BIS-2018-0006-1218 as Exclusion Request No. 1218, which appears on the confidential record at pages BIS-2018-0006-4–108.  The court identifies the requests, objections, rebuttals, surrebuttals, memoranda, and other documents that comprise an exclusion request by the name and number assigned by Commerce.

[7] The constituent exclusion requests are Exclusion Request Nos. 1218 (8-inch non-alloy steel slab), 1221 (10-inch non-alloy steel slab), 1227 (12-inch non-alloy steel slab), 2335 (8-inch non-alloy steel slab), 2336 (10-inch alloy steel slab), and 2337 (12-inch alloy steel slab).

inches.[8]  JSW explained that it required the steel slabs to manufacture steel plate because the slabs were not available in the United States.  See, e.g., Request for Exclusion from Remedies: Section 232 National Security Investigation of Steel Imports at BIS-2018-0006-1218-11–15; Request for Exclusion from Remedies: Section 232 National Security Investigation of Steel Imports at BIS-2018-0006-2337-11–19. Three U.S. producers, U.S. Steel Corporation, AK Steel Corporation, and Nucor Corporation (collectively, "domestic objectors"), objected to JSW's requests and disagreed with JSW's characterization of the domestic non-availability of steel slab. See, e.g., [AK Steel] Objection Filing to Posted Section 232 Exclusion Request: Steel at  BIS-2018-0006-1218-34–36; [Nucor] Objection Filing to Posted Section 232 Exclusion Request: Steel at BIS-2018-0006-1218-37-50; [U.S. Steel] Objection Filing Posted to Section 232 Exclusion Request: Steel at BIS-2018-0006-1218-51–73.  For each of the exclusion requests, JSW submitted rebuttals to the domestic objector's objections, and the domestic objectors submitted surrebuttals.  See, e.g., [JSW] Rebuttal to [Nucor's] Objection Filed Against Request for Exclusion from Remedies: Section 232 National Security Investigation of Steel Imports at BIS-2018-0006-1218-75–85; [JSW] Rebuttal to [U.S. Steel's]  Objection Filed Against Request for Exclusion from Remedies: Section 232 National Security Investigation of Steel Imports at BIS-

---

[8] The constituent exclusion requests are Exclusion Request Nos. 29462 (7.8-inch non-alloy steel slab), 29465 (7.8-inch alloy steel slab), 29470 (8.8-inch non-alloy steel slab), 29474 (8.8-inch alloy steel slab), 29481 (9.8-inch non-alloy steel slab), and 29484 (9.8-inch alloy steel slab).

2018-0006-1218-86–92; [Nucor's] Surrebuttal to Objection Filed Against Request for Exclusion from Remedies: Section 232 National Security Investigations of Steel Imports at BIS-2018-0006-1218-94–97; [U.S. Steel's] Surrebuttal to Objection Filed Against Request for Exclusion from Remedies: Section 232 National Security Investigations of Steel Imports at BIS-2018-0006-1218-98–108.

Nearly one year following the submission of JSW's exclusion requests, BIS issued separate decision memoranda ("BIS decision memoranda") that denied each request. See, e.g., BIS Decisions for JSW Exclusion Requests (BIS-2018-0006-1218-2337) at JSW-GEN-0002. Each BIS decision memorandum concludes that the requested steel slab "is produced in a sufficient and reasonably available amount and of a satisfactory quality" and "that no overriding national security concerns requires that this exclusion request be granted notwithstanding the domestic availability." See, e.g., BIS Decision Document – Steel Section 232 Remedy Exclusion Request, Exclusion Request Number: BIS-2018-0006-29484 at BIS-2018-0006-29484-5. In addition, for half of the exclusion requests, BIS found that the exclusion request was incomplete because "the product description is inconsistent with the claimed classification under the [HTSUS]."[9] See, e.g., BIS Decision Document – Steel Section 232 Remedy Exclusion Request, Exclusion Request Number: BIS-2018-0006-29481 at BIS-2018-0006-29481-4–5

---

[9] Specifically, BIS found that Exclusion Request Nos. 1218, 1221, 1227, 29462, 29470 and 29481 were incomplete due to JSW's erroneous classification of requested steel articles.

On July 30, 2019, JSW initiated this action, challenging Commerce's denials of the exclusion requests.  See Summons, July 30, 2019, ECF No. 1; Compl. Subsequently, the government filed on the docket the confidential and public administrative records underlying those denials and certified the records as complete. See Confidential Admin. Record, Oct. 7, 2019, ECF No. 15; Public Admin. Record, Oct. 7, 2019, ECF No. 16.  JSW, in its moving brief, alluded to a missing email from the Department in connection with three exclusion requests, see Pl.'s Br. at 31 n.83, and indicated that the Inspector General had issued a warning to Commerce Secretary Wilbur Ross, advising that undocumented ex parte communications "giv[e] the appearance that the Section 232 exclusion request review process is not transparent and that decisions are not rendered based on evidence contained in the record." Id. at 3; Pl.'s Mot. at Ex. C.  Defendant did not respond to these assertions in its response brief.  See generally Def.'s Br.  However, after the matter had been fully briefed and following the court's issuance of oral argument questions, Defendant informed the court that certain documents were missing from the administrative record.  See Def.'s Status Report, May 28, 2020, ECF No. 59.  Following a teleconference with the parties, see Telephone Conference, June 4, 2020, ECF No. 69, the court issued an order directing Defendant to complete the administrative record and to file on the docket, on a rolling basis, documents it identified through search that were previously missing from the record.  See Order, June 4, 2020, ECF No. 71.

Court No. 19-00133                                                    Page 11

The court also noted that it considered the matter submitted for decision and that it

would render its decision in due course.  Id.

 Subsequently, and following Defendant's filing of a status report on its

completion of the record, see Def.'s Status Report, July 6, 2020, ECF No. 81, the court

held a second teleconference with the parties on July 7, 2020.  See Order, June 30,

2020, ECF No. 79 (ordering that the parties be prepared to advise the court of any

concerns with the compilation or contents of documents filed to complete the

administrative record during the second teleconference); see also Telephone

Conference, July 7, 2020, ECF No. 82.  In light of JSW's expressed concerns with the

documents added to complete the record, see generally Telephone Conference, July 7,

2020, ECF No. 82, the court directed JSW to file a brief that specifies its concerns

with the government's efforts to complete the record and to request a remedy (or

remedies).  See Order, July, 7, 2020, ECF No. 83.  On July 13, 2020, JSW filed its

brief, which identifies several ex parte meetings between Department officials and

objectors, and requests that the court permit JSW to conduct discovery to uncover

information about the meetings as well as direct Defendant to furnish a privilege log.

See Pl.'s Br. Resp. Ct.'s Order at 1–6, App'x.  On July 20, 2020, Defendant filed its

response brief, opposing JSW's requests.  See Def.'s Resp. JSW's Resp. Ct.'s Order at

1–9, July 20, 2020, ECF No. 88 ("Def.'s Resp. Pl.'s Resp. Ct.'s Order").  On August 3,

2020, Defendant certified that the record was complete, see ECF No. 92, and, on the

same day, JSW filed a status report, reiterating its concern that information

regarding certain <u>ex parte</u> meetings remains missing from the record.  <u>See</u> Pl.'s

Status Report, August 3, 2020, ECF No. 93 ("Pl.'s Status Report").

**JURISDICTION AND STANDARD OF REVIEW**

The Court has jurisdiction under 28 U.S.C. § 1581(i)(2), (4) (2012).  The court

reviews an action brought under 28 U.S.C. § 1581(i) under the same standards as

provided under section 706 of the Administrative Procedure Act ("APA"), as amended.

<u>See</u> 28 U.S.C. § 2640(e) (2012).  Under the statute,

> [t]he reviewing court shall--
> (1)  compel agency action unlawfully withheld or unreasonably delayed;
>       and
> (2) hold unlawful and set aside agency action, findings and conclusions
>       found to be—
>       (A)    arbitrary, capricious, an abuse of discretion, or otherwise
>              not in accordance with law[.]

5 U.S.C. § 706(1), (2)(A).  Under the arbitrary and capricious standard, courts

consider whether the agency "'entirely failed to consider an important aspect of the

problem, offered an explanation for its decision that runs counter to the evidence

before the agency, or [the decision] is so implausible that it could not be ascribed to a

difference in view or the product of agency expertise.'"  <u>Alabama Aircraft Indus., Inc.</u>

<u>v. United States</u>, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting <u>Motor Vehicle Mfrs.</u>

<u>Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983)).

**DISCUSSION**

JSW contends that Commerce's denials of its twelve exclusion requests are

arbitrary and capricious, because Commerce's determinations run counter to the

Court No. 19-00133                                                                              Page 13

evidence before the agency and Commerce fails to articulate any reasoned explanation for its conclusions.  See Pl.'s Br. at 15–37.  In addition, JSW argues that the administrative record is missing information about certain ex parte meetings with objectors to JSW's exclusion requests.  See Pl.'s Br. Resp. Ct's Order at 1–6, App'x; see also Pl.'s Status Report.  JSW requests discovery to unearth the contents of those meetings as well as for Defendant to furnish a privilege log for any redacted materials from the administrative record.  See Pl.'s Br. Resp. Ct's Order at 6; Pl.'s Status Report.  Defendant counters that Commerce reasonably explains the basis for the denials for all twelve exclusion requests and addresses record evidence in the BIS decision and ITA recommendation memoranda.  See Def.'s Br. at 25–36.  Although Defendant acknowledged, after the matter had been fully briefed, the administrative record's incompleteness, see Def.'s Status Report, May 28, 2020, ECF No. 59; see also Order, June 4, 2020, ECF No. 71 (directing Defendant, on a rolling basis, to complete the record with previously missing documents), it submits that neither discovery nor a privilege log would be warranted.  See Def.'s Resp. Pl.'s Br. Resp. Ct.'s Order at 1–9.  For the following reasons, the court remands all twelve exclusion requests, orders Commerce to provide further explanation as to the steps taken to complete the record consistent with this opinion and to supplement the record as appropriate, and denies JSW's requests for discovery and for a privilege log.

        Under section 706 of the APA, a court "review[s] the whole record or those parts of it cited by a party."  5 U.S.C. § 706.  Privileged and deliberative documents

reflecting an agency's internal deliberations do not form part of the administrative record, and, generally, are not discoverable so as to merit a privilege log, unless there is a showing of bad faith or improper behavior.  See, e.g., Stand Up for California! v. U.S. Dep't of Interior, 71 F. Supp. 3d 109, 122–23 (D.D.C. 2014); Oceana, Inc. v. Ross, 920 F.3d 855, 865 (D.C. Cir. 2019).  Rather, judicial review is generally limited to the full administrative record before the agency at the time it rendered its decision. Accord Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971) ("Overton Park"); Camp v. Pitts, 411 U.S. 138, 142 (1973) ("Camp"); Guy v. Glickman, 945 F. Supp. 324, 329 (D.D.C. 1996) ("Glickman"); Pacific Shores Subd. v. U.S. Army Corps of Eng., 448 F. Supp. 2d 1, 4 (D.D.C. 2006) ("Pacific Shores").  "The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'"  Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1380 (Fed. Cir. 2009) ("Axiom") (quoting Murakami v. United States, 46 Fed. Cl. 731, 735 (2000), aff'd, 398 F.3d 1342 (Fed. Cir. 2005)).

When a party challenges an administrative determination, the agency must produce the complete administrative record.  See Nat. Res. Def. Council, Inc. v. Train, 519 F.2d 287, 291 (D.C. Cir. 1975).  The administrative record includes only those documents directly or indirectly considered by the agency.  See Ammex, Inc. v. United States, 23 CIT 549, 554–55, 62 F. Supp. 2d 1148, 1156 (1999) ("Ammex").  An agency enjoys a presumption of regularity as to the record it prepares, because the agency,

as the decision-maker, is generally in the best position to identify and compile those materials it considered.  See Fund for Animals v. Williams, 245 F. Supp. 2d 49, 55–7 (D.C. Cir. 2003); Pacific Shores, 448 F. Supp. 2d at 5.

However, in certain circumstances, a court may direct an agency to complete or supplement the record or order discovery.  Specifically, a court may order completion or supplementation of the record in light of clear evidence that the record was not properly designated or the identification of reasonable grounds that documents considered by the agency were not included in the record.  See Overton Park, 401 U.S. at 419 (A court will order an agency to complete the record when the produced record "clearly do[es] not constitute the 'whole record' compiled by the agency[.]"); see, e.g., Pacific Shores, 448 F. Supp. 2d at 5–7.  Where a party has made a "strong showing of bad faith or improper behavior" by agency decision-makers by providing a reasonable factual basis, a court may order discovery to supplement the record.  See Ammex, 23 CIT at 556, 62 F. Supp. 2d at 1157 (citing Apez Construction Co. v. United States, 719 F. Supp. 1144, 1147 (D. Mass. 1989)) (internal quotations removed); Tenneco Oil Co. v. Dep't of Energy, 475 F. Supp. 299, 317 (D. Del. 1979) (ordering interrogatories and discovery requests to be served on the agency, when the record lacked internal memoranda and guidelines that the agency would have considered).  However, if the agency fails to explain administrative action, the court should "not compensate for the agency's dereliction by undertaking its own inquiry into the merits." Glickman, 945 F. Supp. at 329 (citing Camp, 411 U.S. at 143; Asarco,

Inc. v. U.S. Envtl. Prot. Agency, 616 F.2d 1153, 1159 (9th Cir. 1980)).  The court, instead, should remand a determination.  See, e.g., id. at 332–33.

Here, although JSW indicates that the record remains incomplete, see Pl.'s Status Report, it has not made the requisite showing that discovery is necessary to complete or supplement the record and that a privilege log is merited.  JSW identifies several likely ex parte meetings held with objectors for which Commerce made no record of information discussed in the meetings.  See Pl.'s Br. Resp. Ct's Order at 5, App'x; see also Pl.'s Status Report.  As JSW indicates in its status report, the government has now identified these meetings but has not disclosed their substance.  See Pl.'s Status Report.  Section 232 does not compel agency officials to maintain a record of ex parte communications, unlike the statutory framework governing anti-dumping proceedings.  See 19 U.S.C. § 1677f(a)(3).  Only if relied upon must Commerce provide information pertaining to the meetings JSW identifies as missing from the record, given that the record encompasses materials directly or indirectly considered by the relevant agency decisionmakers.  Cf. Ammex, 23 CIT at 554–55, 62 F. Supp. 2d at 1156.  JSW contends that the discussions at these meeting "were concededly part of what the Department considered[.]"  Pl.'s Status Report.  However, implicit in the Department's certification of the record on August 3, 2020, see ECF No. 92, is a statement that these discussions were not considered by Commerce.  The court will not order disclosure of ex parte communications that were not relied upon by the Department.  However, Commerce must certify steps taken to identify and

correct deficiencies in the administrative record, including steps taken to ascertain if any of the ex parte meetings were directly or indirectly considered by Commerce in its determinations and, if not, how it determined that the discussions at these meetings with the objectors were not directly or indirectly considered in its decisions.[10]  Should Commerce determine, as a result of this process, that there are further materials, such as any notes, memoranda, or other documents pertaining to the ex parte meetings, required to supplement the record, it shall so supplement the record.  If it determines that no further supplementation is required, it shall so state along with its explanation.

Further, although JSW casts Commerce's behavior as "perplexing," "aberrant," "certainly suspicious," and "creat[ing] a strong inference of undue influence suggesting the Department's decisions were not based on the merits of the requests[,]" JSW does not allege impropriety that would warrant discovery.  See Pl.'s Br. Resp. Ct.'s Order at 6 n.4.  As a consequence, a privilege log cataloguing "redactions it has made to documents it has recently added to the Record" is neither necessary nor appropriate.  Pl.'s Br. Resp. Ct.'s Order at 6.  At this juncture, the court declines to order discovery.

---

[10] The court will entertain a request for discovery, should it come to light that Commerce's behavior regarding the record crosses the boundary from merely "suspicious" to evincing bad faith or impropriety.  Cf. Pl.'s Br. Resp. Ct.'s Order at 6 n.4.

Remand of all twelve exclusion requests is warranted because Commerce's denials are devoid of explanation and frustrate judicial review.  Cf. Glickman, 945 F. Supp. at 331–32.  The court cannot be certain what record evidence, if any, Commerce relied upon when both the BIS decision memoranda and ITA recommendation memoranda do not explain what information the sub-agencies considered, how it was weighed, or why the evidence compelled denial.[11]  See, e.g., BIS Decision Document – Steel Section 232 Remedy Exclusion Request, Exclusion Request Number BIS-2018-0006-1221 at BIS-2018-0006-1221-5; Recommendation for Denying of Steel Exclusion Under Section 232 Exclusion Requests: 2018-0006-1221, 2018-0006-1227 at BIS-2018-0006-1221-9.

Each BIS decision memorandum, which is the document communicating the agency's final decision, begins with the same statement that "BIS has considered the evidence provided . . . and taken into account analysis provided by the [ITA]"; and, each memorandum ends with the same conclusion that "BIS accepts ITA's recommended findings as to the domestic availability of the product, and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the domestic availability."  See, e.g., BIS Decision

---

[11] In its brief, JSW requests that the court instruct Commerce to grant JSW's Exclusion Request Nos. 1221, 1227, 2336, 2337, and 29484 "because the correct conclusion based upon the record is so obvious[.]"  Pl.'s Br. at 23 (citing Sierra Club v. EPA, 346 F.3d 955, 963 (9th Cir. 2003)).  Given the relevant BIS decision and ITA recommendation memoranda do not articulate the reasons for the denials and that Commerce may supplement the record consistent with this opinion, the court remands these determinations.  Cf. Glickman, 945 F. Supp. at 331–32.

Document – Steel Section 232 Remedy Exclusion Request, Exclusion Request Number BIS-2018-0006-1221 at BIS-2018-0006-1221-5.   Nowhere does BIS refer to any record evidence in its decision memoranda, be it the exclusion requests themselves or the applicable objections.   See, e.g., id. at BIS-2018-0006-1221-4–6.   For example, for six of JSW's exclusion requests, the BIS decision memoranda conclude that JSW supplied the incorrect 10-digit HTSUS statistical reporting number to identify a submission, stating that Customs and Border Protection ("CBP") advised BIS that the claimed classification is inconsistent with the product description and "provid[ed] the following guidance:"—yet no guidance follows the colon.[12]   See, e.g., id. at BIS-2018-0006-1221-4–5.   BIS's unsupported conclusion does not apprise the court of the reason why the HTSUS statistical reporting number was incorrect or how CBP reached that finding.   Cf. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).   Nor does BIS indicate why an incorrect HTSUS statistical reporting number interferes with its ability to consider the substance of the request or why it does not ask for clarification as to the correct statistical reporting number.   See September Rule, 83 Fed. Reg. at 46,047 ("In cases

---

[12] On remand, Commerce should explain why, in light of the regulations, incorrect classification renders an exclusion request as incomplete and is a basis to reject the request.   See Pl.'s Br. at 12 n.43; see also Def.'s Br. at 23.

where a request is denied for HTSUS issues, companies are encouraged to work with

CBP to confirm the proper classifications and resubmit.")[13]

Likewise, the ITA recommendation memoranda, which recommend to BIS

whether to grant or deny an exclusion request, suffer from the same paucity of

analysis as the BIS decision memoranda.[14]  Although the regulations provide that

---

[13] As an additional example, Defendant seems to argue that it is reasonably discernable from the record that Commerce rejected requests for steel slab within range of thicknesses, i.e., 235–270 mm (9.25–10.63 inches) and 222–257 mm (8.74–10.12 inches), because steel slab was available within those ranges.  See Def.'s Br. at 28–29.  Without further explanation, this reason for rejection would be arbitrary and capricious because Commerce would be treating similar parties differently, as JSW notes, in requiring other requestors, after filing an initial request, to refile without ranges of thickness.  See Pl.'s Reply Memo. L. Further Supp. [Pl.'s Mot.] at 14–16., Mar. 12, 2019, ECF No. 47 ("Pl.'s Reply Br.").

[14] In addition, requestors like JSW do not receive a copy of the ITA decision memoranda as a matter of course.  As JSW notes, it saw, for the first time, a copy of the relevant ITA recommendation memoranda with the filing of the administrative record following the commencement of this action.  See Pl.'s Br. at 12.  Given that the BIS decision memoranda restate, in part, the conclusions of the ITA recommendation memoranda, it is unclear why the ITA recommendation memoranda should be maintained as fully confidential.  Compare Decision Document – Steel Section 232 Remedy Exclusion Request, Exclusion Request Number BIS-2018-0006-1221 at BIS 2018-0006-1221-5 with Recommendation for Denying of Steel Exclusion Under Section 232 Exclusion Requests: 2018-0006-1221, 2018-0006-1227 at BIS-2018-0006-1221-9–10.

Moreover, the Government's assertion that "the record allows the Court, and, indeed, the public, to easily discern how the agency reached its decision[,]" Def.'s Br. at 34, is troubling, particularly when the ITA recommendation memoranda for JSW's requests, which, as noted above, refer to record evidence, were entirely confidential. In addition, given that the regulations compel disclosure of information contained in the exclusion requests, objections, rebuttals, and surrebuttals and require any proprietary information submitted to be summarized "in sufficient detail to permit a reasonable understanding of the substance of the information[,]" 15 C.F.R. Pt. 705,

(footnote continued)

Commerce's "[r]esponse to an exclusion request will . . . be responsive to any of the objection(s), rebuttal(s), and surrebuttal(s) for that submitted exclusion request[,]" 15 C.F.R. Pt. 705, Supp. 1 at ¶ (h)(2)(i)(A), the ITA recommendation memoranda merely catalogue a brief selection of evidence on the record.[15] See, e.g., Recommendation for Denying of Steel Exclusion Under Section 232 Exclusion Requests: 2018-0006-1221, 2018-0006-1227 at BIS-2018-0006-1221-9. The ITA recommendation memoranda neither address detracting evidence[16] nor provide any analysis of the evidence, even

---

Supp. 1 at ¶ (b)(5)(ii)–(iii), it is unclear why a public version of the recommendation memoranda could not be prepared and disclosed. Defendant concedes this point, given that it has filed, on the record, public versions of the ITA recommendation memoranda for JSW's exclusion requests. See Def.'s Resp. Ct.'s Request Regarding Redaction, May 29, 2020, ECF No. 60.

[15] Several of the ITA recommendation memoranda cover multiple exclusion requests. See Def.'s Br. at 17 (noting that ITA prepared four recommendation memoranda covering JSW's twelve exclusion requests).

[16] For example, as JSW notes, the ITA judges "Nucor's product as a suitable substitute" but provides no explanation and does not address detracting evidence that Nucor only produces a downstream product, not a substitute product. See Pl.'s Reply Br. at 8 (citing Recommendation for Denying of Steel Exclusion Under Section 232 Exclusion Requests: 2018-0006-1221, 2018-0006-1227 at BIS-2018-0006-1221-9). Indeed, in its objections to those exclusion requests, Nucor indicated that it neither manufacturers nor can "immediately" (i.e., within eight weeks) manufacture JSW's requested steel slab or a substitute produce, and, instead, merely stated that it could produce a downstream product within 84 days. [Nucor] Objection Filing Posted to Section 232 Exclusion Request: Steel at BIS-2018-0006-1221-44; [Nucor] Objection Filing Posted to Section 232 Exclusion Request: Steel at BIS-2018-0006-1227-44. ITA does not explain why it considers Nucor's domestically available downstream product is equivalent as a substitute. Cf. 15 C.F.R. Pt. 705, Supp. 1 at ¶ (c)(6)(ii).

In addition, JSW explained in its exclusion requests that it requires certain thicknesses of steel to satisfy "reduction ratios" to manufacture steel plate. See Pl.'s

(footnote continued)

in the section of the memoranda entitled "Analysis."[17]  See, e.g., id. at BIS-2018-0006-

9.  In addition, the ITA recommendation memoranda for all twelve exclusion requests

at issue conclude that "[b]ecause there is indication of sufficient U.S. production

availability" the ITA recommends denying JSW's requests.      See, e.g.,

Recommendation for Denying of Steel Exclusion Under Section 232 Exclusion

Requests: 2018-0006-1221, 2018-0006-1227 at BIS-2018-0006-1221-10.  However, the

regulations simply state that "[a]n exclusion will only be granted if an article is not

produced in the United States in a sufficient and reasonably available amount, is not

produced in the United States in a satisfactory quality, or for specific national

security considerations."  See 15 C.F.R. Pt. 705, Supp. 1 at ¶ (c)(5); see also id. at ¶

(c)(6).  The regulations do not provide for the denial of an exclusion request upon the

showing of an "indication" of sufficient U.S. production.  It is unclear what constitutes

an "indication" of sufficient U.S. production, or why an "indication" of U.S domestic

---

Br. at 33–34.  Even though the regulations state that steel may be considered
equivalent as a substitute product if it meets, inter alia, "internal company quality
controls or standards[,]" 15 C.F.R. Pt. 705, Supp. 1 at ¶ 1 (c)(6)(ii), and the September
2018 Federal Register Notice, notes that the exclusion review process accounts for
the "quality needs of requestors[,]" neither BIS nor ITA address JSW's internal
quality considerations in their respective memoranda.  See September Rule, 83 Fed.
Reg. at 46,039.

[17] For example, in the "Analysis" section of the ITA recommendation memorandum
for Exclusion Request Nos. 29462, 29465, 29470, 29474, 29481, and 29484, the ITA
summarizes JSW's, Nucor's, and U.S. Steel's submissions and does not, itself, analyze
those statements.  See Recommendation for Denying Steel Exclusion Request Unser
Section 232 Exclusion Requests 2018-0006-29462, 2018-0006-29465, 2018-0006-
29470, 2018-0006-29474, 2018-0006-29481, 2018-0006-29484 at BIS-2018-0006-
29484-9.

production of the steel articles in question accords with the regulation. Commerce does not further explain how that term is used either in its regulations or in the BIS decision or ITA recommendation memoranda. Given the defects in the record and Commerce's failure to engage with record evidence,[18] the court orders completion of the record, inclusive of any information directly or indirectly considered by the Department in its determinations, and remands, for further consideration and explanation Commerce's denials of all twelve exclusion requests, in light of the completed record.[19]

## CONCLUSION

In accordance with the foregoing, it is

**ORDERED** that on or before Monday, August 17, 2020 Defendant shall file, as part of its U.S. Court of International Trade Rule 73.3 certification, a statement that sets forth: the steps taken to ascertain that the record for the original proceeding is complete, including identifying how the Department identified missing information and the existence of ex parte communications; and, to what extent any ex parte communications were or were not directly or indirectly relied upon or referred to by Commerce in making its determinations; and it is further

---

[18] Defendant concedes that BIS lacked "an established process or dedicated systems for collecting and compiling an administrative record in a Section 232 exclusion case[.]" See [Def.'s] Resp. Ct.'s May 2020 Order at 2, June 3, 2020, ECF No. 64.

[19] Defendant requests a remand for Exclusion Request No. 1227. See Def.'s Br. at 36. However, for the reasons discussed above, the court remands all twelve exclusion requests at issue, including Exclusion Request No. 1227.

**ORDERED** that Defendant shall file on the docket and further supplement the record with any information, inclusive of any information directly or indirectly considered by Commerce, in its determinations that it determines should be included in the record as a result of explaining the steps taken to ensure completion of the administrative record on or before Monday, August 17, 2020; and it is further

**ORDERED** that Commerce's determinations not to exclude twelve steel articles from the remedy imposed by the President under Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862, as challenged in this action (i.e., Exclusion Request Nos. 1218 (8-inch non-alloy steel slab from India), 1221 (10-inch non-alloy steel slab from India), 1227 (12-inch non-alloy steel slab from India), 2335 (8-inch non-alloy steel slab from India), 2336 (10-inch alloy steel slab from India), 2337 (12-inch alloy steel slab from India), 29462 (7.8-inch non-alloy steel slab from Mexico), 29465 (7.8-inch alloy steel slab from Mexico), 29470 (8.8-inch non-alloy steel slab from Mexico), 29474 (8.8-inch alloy steel slab from Mexico), 29481 (9.8-inch non-alloy steel slab from Mexico), and 29484 (9.8-inch alloy steel slab from Mexico)), are remanded for further explanation and consideration, specifically to (1) identify and correct all deficiencies in the existing administrative record, including but not limited to locating and adding all of Commerce's communications with domestic industry objectors concerning JSW's exclusion requests insofar as such communications are not part of the existing record and were directly or indirectly considered by Commerce in its determinations, and (2) fully reconsider or provide further explanation of its denials

Court No. 19-00133                                                                Page 25

of all of JSW's exclusion requests, consistent with this opinion and in light of the

complete administrative record; and it is further

    **ORDERED** that Commerce shall file its remand redeterminations with the

court within 90 days of this date; and it is further

    **ORDERED** that Defendant shall file the administrative record for any

remand proceedings no later than 14 days after filing the remand results; and it is

further

    **ORDERED** that on the same day that Defendant files the administrative

record for any remand proceedings, Defendant shall also file as part of its U.S. Court

of International Trade Rule 73.3 certification, a statement identifying whether the

determinations on remand are based on the original administrative record, the new

record on remand, or both, and whether any of the ex parte meetings were or were

not directly or indirectly considered by Commerce in its determinations; and it is

further

    **ORDERED** that the parties shall have 30 days after the filing of the remand

results to file comments on the remand redetermination; and it is further

    **ORDERED** that the parties shall have 30 days to file their replies to

comments on the remand redetermination.

                                   /s/ Claire R. Kelly
                                  Claire R. Kelly, Judge

Dated:      August 5, 2020
            New York, New York